Troy Law, PLLC
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorneys for the Plaintiff, proposed FLSA Collective*
*and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

BOON HOOI TEOH,
*on behalf of himself and others similarly situated,*

                                                  Plaintiff,

                        v.

MANHASSET RESTAURANT, LLC
        d/b/a Toku Modern Asian,
ROSLYN HOSPITALITY, LLC
        d/b/a Hendrick's Tavern,
GOLD COAST RESTAURANT CORP.
        d/b/a Bryant & Cooper Steak House,
MIRACLE MILE RESTAURANT, LLC
        d/b/a Cipollini,
WHEATLEY RESTAURANT, LLC
        d/b/a Bar Frites,
EAST MEADOW AVENUE RESTAURANT CORP.
        d/b/a Majors Steakhouse,
100 HOSPITALITY, LLC
        d/b/a The Bryant,
POLL RESTAURANT GROUP, INC.,
GEORGE POLL
        a/k/a George J. Poll, and
GILLIS POLL
        a/k/a Gillis J. Poll
        a/k/a Gillis W. Poll,

                                                  Defendants.

-------------------------------------------------------------------x

Case No. 22-cv-04110

**29 U.S.C. § 216(b) COLLECTIVE**
**ACTION & FED. R. CIV. P. 23**
**CLASS ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

        Plaintiff Boon Hooi Teoh (hereinafter referred to as "Teoh" or "Plaintiff"), on behalf of

himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings

this complaint against Manhasset Restaurant, LLC d/b/a Toku Modern Asian, Roslyn Hospitality,

LLC d/b/a Hendrick's Tavern, Gold Coast Restaurant Corp. d/b/a Bryant & Cooper Steak House,

Miracle Mile Restaurant, LLC d/b/a Cipollini, Wheatley Restaurant, LLC d/b/a Bar Frites, East Meadow Avenue Restaurant Corp. d/b/a Majors Steakhouse, 100 Hospitality, LLC d/b/a The Bryant, and Poll Restaurant Group, Inc., (hereinafter referred to collectively as the "Entity Defendants"); George Poll a/k/a George J. Poll (hereinafter referred to as "George Poll"), and Gillis Poll a/k/a Gillis J. Poll a/k/a Gillis W. Poll (hereinafter referred to as "Gillis Poll") (hereinafter referred to collectively with George Poll as the "Individual Defendants") (Individual Defendants hereinafter referred to collectively with the Entity Defendants as the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Teoh brings this action on behalf of himself and others similarly situated against Defendants for their violations of the Fair Labor Standards Act ("FLSA"), 29. U.S.C. §§ 201 *et seq.*, of the Wage Theft Prevention Act ("WPTA") and Minimum Wage Act ("MWA") incorporated in the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, and the Hospitality Industry and Wage Order ("Wage Order"), 12 N.Y.C.R.R. § 146, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and/or practices.

2.      Teoh alleges under the FLSA that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages or prejudgment interest, (3) postjudgment interest, and (4) reasonable attorneys' fees and costs.

3.      Teoh further alleges pursuant to NYLL and the Wage Order that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) spread of time wages, (3) liquidated damages, (4) prejudgment interest, (5) postjudgment interest, (6) statutory damages for failure to provide wage statements with each payment of wages, and (7) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5.      This Court has supplemental jurisdiction over Teoh's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York

## PLAINTIFF

7.      From in or about 2010 through the present, Teoh was, and is still, employed by Defendants as a sushi chef at Toku Modern Asian restaurant, operated by Manhasset Restaurant LLC and doing business at 2014C Northern Boulevard, North Gate & Searingtown Road, Manhasset, NY 11030.

## DEFENDANTS

### *Entity Defendants*

8.      Manhasset Restaurant, LLC d/b/a Toku Modern Asian was, throughout the period relevant to this lawsuit, and remains, a domestic limited liability company with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 2014C Northern Boulevard, North Gate & Searingtown Road, Manhasset, NY 11030.

9.      Manhasset Restaurant, LLC d/b/a Toku Modern Asian was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

10.     Manhasset Restaurant, LLC d/b/a Toku Modern Asian was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not

limited to using fish caught and/or farmed outside the state of New York, and alcohol from outside the State of New York.

11.     Roslyn Hospitality, LLC d/b/a Hendrick's Tavern was, throughout the period relevant to this lawsuit, and remains, a domestic limited liability company with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 1305 Old Northern Boulevard, Tower Street & Lumber Road, Roslyn, NY 11576.

12.     Roslyn Hospitality, LLC d/b/a Hendrick's Tavern was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

13.     Roslyn Hospitality, LLC d/b/a Hendrick's Tavern was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using alcohol from outside the State of New York.

14.     Gold Coast Restaurant Corp. d/b/a Bryant & Cooper Steak House was, throughout the period relevant to this lawsuit, and remains, a domestic business corporation with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 2 Middle Neck Road, Roslyn, NY 11576.

15.     Gold Coast Restaurant Corp. d/b/a Bryant & Cooper Steak House was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

16.     Gold Coast Restaurant Corp. d/b/a Bryant & Cooper Steak House was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using fish and shellfish caught and/or farmed outside the state of New York, and alcohol from outside the State of New York.

17.     Miracle Mile Restaurant, LLC d/b/a Cipollini was, throughout the period relevant

to this lawsuit, and remains, a domestic limited liability company with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 2110C Northern Boulevard, North Gate & Searingtown Road, Manhasset, NY 11030.

18.     Miracle Mile Restaurant, LLC d/b/a Cipollini was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

19.     Miracle Mile Restaurant, LLC d/b/a Cipollini was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using alcohol from outside the State of New York.

20.     Wheatley Restaurant, LLC d/b/a Bar Frites was, throughout the period relevant to this lawsuit, and remains, a domestic limited liability company with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 400 Wheatley Plaza, Glen Cove Road & Northern Boulevard, Greenvale, NY 11548.

21.     Wheatley Restaurant, LLC d/b/a Bar Frites was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

22.     Wheatley Restaurant, LLC d/b/a Bar Frites was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using alcohol from outside the State of New York.

23.     East Meadow Avenue Restaurant Corp. d/b/a Majors Steakhouse was, throughout the period relevant to this lawsuit, and remains, a domestic business corporation with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 272, 274 & 284 East Meadow Avenue, East Meadow, NY 11554.

24.     East Meadow Avenue Restaurant Corp. d/b/a Majors Steakhouse was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per

year.

25.     East Meadow Avenue Restaurant Corp. d/b/a Majors Steakhouse was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using alcohol from outside the State of New York.

26.     100 Hospitality, LLC d/b/a The Bryant was, throughout the period relevant to this lawsuit, and remains, a domestic limited liability company with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 100 Walt Whitman Road, Huntington Station, NY 11746.

27.     100 Hospitality, LLC d/b/a The Bryant was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

28.     100 Hospitality, LLC d/b/a The Bryant was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce including but not limited to using fish caught and/or farmed outside the state of New York, and alcohol from outside the State of New York.

29.     Poll Restaurant Group, Inc. was, throughout the period relevant to this lawsuit, and remains, a domestic business corporation with a registered address at 2 Middle Neck Road, Roslyn, NY 11576 and principal place of business at 2 Middle Neck Road, Roslyn, NY 11576.

30.     Poll Restaurant Group, Inc. was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

31.     Poll Restaurant Group, Inc. was during the period relevant to this lawsuit a business engaged in interstate or foreign commerce.

*Individual Defendants*

32.     The Individual Defendants are the owners (variously shareholders of Gold coast Restaurant Corp., East Meadow Avenue Restaurant Corp., and Poll Restaurant Group, Inc.; and

members of Manhasset Restaurant, LLC, Roslyn Hospitality, LLC, Miracle Mile Restaurant, LLC, Wheatley Restaurant, LLC, and 100 Hospitality, LLC) and controllers (variously officers of Gold coast Restaurant Corp., East Meadow Avenue Restaurant Corp., and Poll Restaurant Group, Inc.; and managing members of Manhasset Restaurant, LLC, Roslyn Hospitality, LLC, Miracle Mile Restaurant, LLC, Wheatley Restaurant, LLC, and 100 Hospitality, LLC) of each of the Entity Defendants and active managers at the restaurants operated by the Entity Defendants with authority over their employees, including Teoh.

33.     According to the New York Department of State, Division of Corporations, George Poll is the Chief Executive Officer of East Meadow Avenue Restaurant Corp.

34.     According to the New York Department of State, Division of Corporations, Gillis Poll is the Chief Executive Officer of Gold Coast Restaurant Corp. and Poll Restaurant Group, Inc.

35.     According to the New York Department of Alcoholic Beverage Control, George Poll and Gillis Poll are both, jointly, liquor license principals for: Manhasset Restaurant, LLC d/b/a Toku Modern Asian; Roslyn Hospitality, LLC d/b/a Hendrick's Tavern; Gold Coast Restaurant Corp. d/b/a Bryant & Cooper Steak House; Miracle Mile Restaurant, LLC d/b/a Cipollini; Wheatley Restaurant, LLC d/b/a Bar Frites; and 100 Hospitality, LLC d/b/a The Bryant.

36.     The Individual Defendants are brothers.

37.     The Individual Defendants jointly hired Karolina Marzecka (hereinafter "Marzecka"), the site manager for Toku Modern Asian and Teoh's superior. George Poll additionally hired another manager named Gabriel, whose last name Teoh does not know, and a general manager for all the sites named Magda.

38.     George Poll had, and exercised both directly and through Marzecka, the authority to hire, verbally warn, discipline, and terminate employees. Teoh has observed Marzecka verbally

warning, and terminating, both in George Poll's name, employees for spending too much time on their cell phones.

39.     Gillis Poll had, and exercised directly, the authority to hire and fire employees. In about 2018, Teoh observed Gillis Poll terminate a bartender at Toku Modern Asian for opening a hot water valve and triggering an alarm.

40.     George Poll delegated to Marzecka and a Mr. Cheng (whose first name Teoh does not know, but who was the head sushi chef at Toku Modern Asian; hereinafter "Cheng") the authority to determine employees' and in particular Teoh's work schedule.

41.     George Poll decided, on Gabriel's recommendation, to change Teoh's compensation scheme from $13.50 per hour to $55,000.00 per year on or about August 28, 2017; decided following a request Teoh placed with Marzecka to raise Teoh's salary from $55,000.00 per year to $60,000.00 per year on or about July 1, 2019; decided on his own to raise Teoh's salary from $60,000.00 per year to $65,000.00 per year on or about September 23, 2019; and decided following a request Teoh placed with Marzecka to raise Teoh's salary from $65,000.00 per year to $72,000.00 per year on or about September 6, 2021 (and also decided to raise a number of other employees' compensations at the same time).

42.     The Individual Defendants jointly maintained employee records from each of the Entity Defendants at a central office located at 2 Middle Neck Road, Roslyn, NY 11576 (these also being the premises of Bryant & Cooper Steak House).

43.     The Individual Defendants acted willfully, intentionally, and maliciously and are employers within the meaning of the FLSA and NYLL, and are jointly and severally liable with Corporate Defendants.

## STATEMENT OF FACTS

### *Entity Defendants Constitute a Single Integrate Enterprise*

44.     Entity Defendants constitute an enterprise as the term defined by 29 U.S.C. § 203(r), known as the "Poll Restaurants," and in that capacity are a single employer with respect to Teoh.

45.     The Poll Restaurants are a group of restaurants (and one butcher shop and retail market attached to Bryant & Cooper Steak House) centrally managed and controlled from the office at 2 Middle Neck Road, Roslyn, NY 11576. This is the address appearing on Teoh's paystubs from Manhasset Restaurant LLC even though Manhasset Restaurant LLC's business consisted of operating a restaurant at 2014C Northern Boulevard, North Gate & Searingtown Road, Manhasset, NY 11030.

46.     Upon information and belief, Poll Restaurant Group, Inc. in particular is a management company centrally directing the unified business of the Poll Restaurants.

47.     The entities operating the Poll Restaurants share common owners in the persons of the Individual Defendants, who are the shareholders of the corporate Entity Defendants and members of the LLC Entity Defendants.

48.     The entities operating the Poll Restaurants share common operators, persons with financial control, and managers in the persons of the Individual Defendants, who are officers of the corporate Entity Defendants, managing members of the LLC Entity Defendants, and liquor license principals for all of the Entity Defendants, and who exercise control over employees as set forth above.

49.     On or about June 6, 2018, each and every one of the Entity Defendants, along with the entities 57 Prime LLC, East Meadow Avenue Realty, LLC, G.W. Roslyn Realty, LLC, Middleneck Realty Associates LLC, and Two Middleneck Realty, LLC (each of which *also* has a registered address at 2 Middle Neck Road, Roslyn NY 11576 (East Meadow Avenue Realty, LLC

and G.W. Roslyn Realty, LLC also list "Gillis W. Poll" and "Gillis Poll" respectively as a person who will accept service of process)), jointly sought and obtained a loan from TD Bank, N.A. using for collateral all their assets and proceeds, accounts, machinery, inventory, fixtures, equipment, general intangibles, paper chattles, and contract rights.

50.     On or about May 16, 2019, each and every one of the Entity Defendants, along with the entities 57 Prime LLC, East Meadow Avenue Realty, LLC, G.W. Roslyn Realty, LLC, Middleneck Realty Associates LLC, and Two Middleneck Realty, LLC, again jointly sought and obtained a loan from TD Bank, N.A. using for collateral all their assets and proceeds, accounts, machinery, inventory, fixtures, equipment, general intangibles, paper chattles, and contract rights.

51.     Entity Defendants jointly maintain a single unified website, pollrestaurants.com.

52.     On pollrestaurants.com, the Entity Defendants:

    a.  List each of the locations operated by the Entity Defendants, along with their operating hours, and advertising each with a brief description that trades heavily on the reputation of the Individual Defendants as restauranteurs (Toku Modern Asian's page, for instance, describes "Gillis and George Poll" opening "Toku: a magnificent Modern Asian restaurant at Americana Manhasset," "having conquered steakhouse, seafood, and Italian cuisines;"

    b.  Maintain a single "careers" page directing prospective "servers, bussers, bartenders, hostesses, chefs, line cooks, and restaurant managers" to email their resumes to employment@pollrestaurants.com, without differentiating between location or cuisine;

    c.  Advertise a unified gift card program, one of the promised benefits of which is that "no matter which gift card you choose, it can be used at any of the Poll Restaurants,"

and directing customers to "call any of our restaurants to have a gift card sent to you in the mail;"

d. Maintain a database of reviews of each of the restaurants many of which also point out the Individual Defendants as the common owners and operators of the restaurants. For instance, the most recent review (of Bryant & Cooper Steak House, on August 28, 2019), lists "the Poll brothers' establishments" as "Toku Modern Asian and Cipollini Trattoria + Bar in Manhasset, Hendrick's Tavern in Roslyn, Bar Frites in Greenvale, Majors in East Meadow, [and] The Bryant in Huntington Station," and recommends that readers "go elsewhere for sushi—maybe Toku."

53.     From time to time, employees from one location are dispatched to other locations based on need. For instance, about once per month throughout 2017 and 2018, Teoh was directed by Mr. Cheng and one of the managers at Toku to make sushi for a party of customers at Hendrick's, to bring the sushi, along with rice and sauce, from Toku to Hendrick's to be served, and to bring dirty rice bowls and sauce containers back to Toku to be cleaned. While Teoh was making sushi for Hendrick's customers, serving the sushi at Hendrick's, and driving to and from Hendrick's, he stayed on the clock at Toku, and was paid for this time by Manhasset Restaurant LLC d/b/a Toku Modern Asia.

54.     Mr. Cheng himself also made sushi to be served at Hendrick's, drove it to Hendricks to be served, and drove back the dirty dishes to be cleaned, about once per month, throughout Teoh's employment.

55.     Over the course of about six months in 2020, Mr. Cheng had to help out at The Bryant on a regular basis, at first about once per week, then as The Bryant began to operate more smoothly, dropping steadily to about once per month.

56.     At all times relevant herein, Entity Defendants are, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

57.     At all relevant times, the work performed by Teoh was directly essential to the business operated by the Defendants.

*Plaintiff Boon Hooi Teoh*

58.     From in or about 2010 through the present, Teoh was, and is still, employed by Defendants as a sushi chef at Toku Modern Asian restaurant, operated by Manhasset Restaurant LLC and doing business at 2014C Northern Boulevard, North Gate & Searingtown Road, Manhasset, NY 11030.

59.     Teoh's primary duty was cutting fish and assembling sushi. His duties, while essential to the operation of the business, did not require the exercise of discretion and independent judgment.

60.     Mr. Cheng was the head sushi chef and customarily and regularly directed the work of the other sushi chefs, including Teoh.

61.     Teoh did not possess the authority to hire, fire, or discipline other employees. That was solely the province of the managers, including Marzecka, Gabriel, and Magda, and the Individual Defendants. Teoh did not make any recommendations as to the hiring, firing, or disciplining of other employees.

62.     Teoh was not exempt from receiving overtime.

63.     From the beginning of the period relevant to this lawsuit through on or about September 22, 2019, Teoh regularly worked about 53 hours per week: from 11:00 AM through 10:00 PM with one 1-hour break on Mondays; from 11:00 AM through 10:30 PM with one 1-hour break on Thursdays and Fridays; from 11:00 AM through 11:30 PM with one 1-hour break on Saturdays; and from 11:00 AM through 10:30 PM with one 1-hour break on Sundays.

64.     From on or about September 23, 2019 through on or about February 29, 2020, Teoh regularly worked about 50 hours per week: from 11:00 AM through 10:30 PM with one 1-hour break on Mondays; from 12:00 PM through 10:30 PM with one 1-hour break on Thursdays and Fridays; from 12:00 PM through 11:00 PM with one 1-hour break on Saturdays; and from 11:00 AM through 10:30 PM with one 1-hour break on Sundays.

65.     From on or about March 1, 2020 through on or about May 31, 2020, Teoh regularly worked about 40 hours per week: from 12:00 AM through 8:00 PM on Mondays, Thursdays, Fridays, Saturdays, and Sundays.

66.     From on or about June 1, 2020 through on or about March 31, 2022, Teoh regularly worked about 49 hours per week: from 11:00 AM through 10:30 PM with one 1-hour break on Mondays; from 12:30 PM through 10:30 PM with one 1-hour break on Thursdays and Fridays; from 12:30 PM through 11:30 PM with one 1-hour break on Saturdays; and from 11:00 AM through 10:30 PM with one 1-hour break on Sundays.

67.     From on or about April 1, 2022 through the present, Teoh regularly worked about 43 hours per week: from 2:00 PM through 10:30 PM with one 1-hour break on Mondays; from 12:30 PM through 10:30 PM with one 1-hour break on Thursdays and Fridays; from 12:30 PM through 11:30 PM with one 1-hour break on Saturdays; and from 2:00 PM through 10:30 PM with one 1-hour break on Sundays.

68.     Until about August 27, 2017, Teoh recorded his time on a time clock. Thereafter, his hours were not recorded.

69.     From the beginning of the period relevant to this lawsuit through about August 27, 2017, Teoh was paid at a rate of $13.50 for straight-time hours, $20.25 for overtime hours, and was paid $13.50 for each day his spread of time exceeded 10 hours.

70.     However, from on or about August 28, 2017 through the present, Teoh was paid on a yearly salary basis.

71.     From on or about August 28, 2017 through on or about January 12, 2020, Teoh was paid his salary in installments every 2 weeks, each installment (except when they were augmented or docked, as set forth below) amounting to his yearly salary divided by 26 2-week periods per year.

72.     From on or about January 13, 2020 through the present, Teoh was paid his salary in weekly installments, each installment (except when they were augmented or docked, as set forth below) amounting to his yearly salary divided by 52 weeks per year.

73.     From on or about August 28, 2017 through on or about June 30, 2019, Teoh's salary was $55,000.00 per year.

74.     From on or about July 1, 2019 through on or about September 22, 2019, Teoh's salary was $60,000.00 per year.

75.     From on or about September 23, 2019 through on or about September 5, 2021, Teoh's salary was $65,000.00 per year.

76.     From on or about September 6, 2021 through the present, Teoh's salary was $72,000.00 per year.

77.     Teoh's weekly salary payments were subject to augmentation and deduction depending on how many days he worked in the week. For instance, the week of November 29, 2021, Teoh's regular weekly salary installment was $1,384.61 ($72,000.00 per year / 52 weeks per year), but he was paid $1,661.53 for that week due to working six days instead of his regular five days. For another instance, the week of November 22, 2021, he was paid $553.84 due to working two days instead of his regular five days.

78.     There was no understanding between Teoh and Defendants, or any representative of Defendants, that Teoh's salaries would be for a particular number of hours, or would cover all his hours, or would include an overtime premium, or would include spread of time pay.

79.     Teoh's salary did not include any pay for hours worked each week beyond the 40th hour.

80.     Teoh's salary did not include an overtime premium for hours worked each week beyond the 40th hour.

81.     Teoh's salary did not include a spread of time premium for days when his spread of time exceeded 10 hours.

82.     Prior to on or about August 28, 2017, Teoh's paystubs reflected his regular and overtime hours worked and pay rates. From on or about August 28, 2017 and thereafter, Teoh's paystubs failed to reflect his regular and overtime hours worked or pay rates.

83.     Defendants committed the foregoing acts knowingly, intentionally, willfully and maliciously against Teoh, the Collective, and the Class.

## COLLECTIVE ACTION ALLEGATIONS

84.     Teoh brings this action individually and on behalf of all other current and former non-exempt restaurant workers employed by Defendants who were not paid overtime over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ACTION ALLEGATIONS

85.     Teoh brings his state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt restaurant workers who were not paid overtime employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

86.     The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

*Numerosity*

87.     The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

88.     Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

*Commonality*

89.     There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were paid for overtime hours at rates one and one-half times their regular rates; (3) whether the Class members were paid an extra hour's pay at the minimum wage for each day their spread of time exceeded 10 hours; (4) whether the Class members were provided with wage statements adequate under Section 195.3 of the NYLL; and (5) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

*Typicality*

90.     Teoh's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

91.     All the Class members were subject to the same policy and practice of denying minimum wage and overtime.

92. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

93. Teoh and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

### Adequacy

94. Teoh is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

95. Teoh is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

### Superiority

96. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

97. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

98. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

99. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court

and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

100.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

101.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

102.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

103.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

104.     Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

105.     Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## **STATEMENT OF CLAIMS**

### **COUNT I.**
### **VIOLATION OF 29 U.S.C. §207(a)(1) FAILURE TO PAY OVERTIME—BROUGHT ON BEHLAF OF THE PLAINTIFF AND THE COLLECTIVE**

106.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

108.    From on or about August 28, 2017, Teoh was paid a salary that did not include additional pay at time-and-a-half for overtime.

109.    Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

110.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Teoh overtime.

## COUNT II.
## VIOLATION OF 12 N.Y.C.R.R. §146-1.4 FAILURE TO PAY OVERTIME—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.    Section 659 of the NYLL authorizes the Commissioner of Labor to issue minimum wage orders, including the Wage Order.

113.    Section 146-1.4 of the Wage Order provides that "[a]n employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in

excess of 40 hours in one workweek. When an employer is taking a credit toward the basic minimum hourly rate pursuant to section 146-1.3 of this Subpart, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by 1½, minus the tip credit. It is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half."

114.     From on or about August 28, 2017, Teoh was paid a salary that did not include additional pay at time-and-a-half for overtime.

115.     Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

116.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Teoh overtime.

### COUNT III.
### VIOLATION OF 12 N.Y.C.R.R. §146-1.6 FAILURE TO PAY SPREAD OF TIME—BROUGHT ON BEHLAF OF THE PLAINTIFF AND THE CLASS

117.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.     Section 659 of the NYLL authorizes the Commissioner of Labor to issue minimum wage orders, including the Wage Order.

119.     Section 146-1.6 of the Wage Order provides that "[o]n each day which the spread

of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum

hourly rate[; t]he additional hour of pay shall not be offset by any credits for meals or lodging

provided to the employee[; t]he additional hour of pay is not a payment for time worked or work

performed and need not be included in the regular rate for the purpose of calculating overtime pay[;

t]his section shall apply to all employees in restaurants and all-year hotels, regardless of a given

employee's rate of pay."

120.     From on or about August 28, 2017, Teoh was paid a salary that did not include

additional pay at the minimum wage rate for each day her spread of time exceeded ten (10) hours.

121.     Section 663.1 of the NYLL provides that "[i]f any employee is paid by his or her

employer less than the wage to which he or she is entitled under the provisions of this article, he

or she shall recover in a civil action the amount of any such underpayments, together with costs

all reasonable attorney's fees, prejudgment interest as required under the civil practice law and

rules, and unless the employer proves a good faith basis to believe that its underpayment of wages

was in compliance with the law, an additional amount as liquidated damages equal to one hundred

percent of the total of such underpayments found to be due. Any agreement between the employee,

and the employer to work for less than such wage shall be no defense to such action."

122.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the

NYLL by failing to pay Teoh spread of time.

## COUNT IV.
## VIOLATION OF NYLL § 195.3 FAILURE TO FURNISH WAGE NOTICE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

123.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

124.     Section 195.3 of the NYLL provides that "[e]very employer shall furnish each

employee with a statement with every payment of wages, listing the following: the dates of work

covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

125.    From on or about August 28, 2017, Teoh's paystubs failed to reflect his regular and overtime hours worked or pay rates.

126.    Section 198.1-d of the NYLL provides that "[i]f an employee is not provided a statement or statements as required by [N.Y. Lab. L. § 195.3], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees. The court may also award other relief, including injunctive or declaratory relief, that the court in its discretion deems necessary and appropriate."

127.    Defendants knowingly, willfully and maliciously failed to furnish Teoh a wage statement as provided by Section 195.3 of the NYLL with each payment of wages.

## DEMAND FOR TRIAL BY JURY

128.    Teoh demand as trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

A.      At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt restaurant workers and not paid overtime. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C.      An injunction against Entity Defendants, their owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

D.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

E.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under NYLL and the Wage Order;

F.      An award of unpaid spread-of-time, and liquidated damages equal to unpaid spread-of-time, due to Plaintiff and the Class under the NYLL and the Wage Order;

G.      An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage statement with each payment of wages;

H.      An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

I.      An award of reasonable attorneys' fees and costs;

J.      An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

K.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
       July 13, 2022

TROY LAW, PLLC
*Attorneys for Plaintiff, proposed FLSA*
*Collective, and potential Rule 23 Class*


 */s/ John Troy*
John Troy
Aaron B. Schweitzer
Tiffany Troy
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com