**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Boon Hooi Teoh,<br><br>            Plaintiff,<br><br>        -v-<br><br>Manhasset Restaurant, LLC; Roslyn Hospitality, LLC; Gold Coast Restaurant Corp.; Miracle Mile Restaurant, LLC; Wheatley Restaurant, LLC; East Meadow Avenue Restaurant Corp.; 100 Hospitality, LLC; Poll Restaurant Group, Inc.; George Poll; and Gillis Poll,<br><br>            Defendants. | 2:22-cv-4110<br>(NJC) (LGD) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

In October 2024, this action was tried before a jury, which returned a verdict for Plaintiff Boon Hooi Teoh ("Teoh") on claims against all Defendants[1] for unpaid overtime and spread of hours wages under the New York Labor Law ("NYLL") and its implementing regulations, 12 N.Y.C.R.R. §§ 146-1.4 and 146-1.6. (Court Ex. 5 ("Jury Verdict Form"), ECF No. 92.) Specifically, the jury found that, although Defendants paid Teoh an annual salary, Teoh was not an "executive employee" exempt from the NYLL's requirements that employees receive (1) one-and-a-half times their "regular rate of pay" for all hours over 40 worked in a given workweek, and (2) one extra hour of pay for each workday in which the employee's spread-of-hours worked exceeds ten. (Jury Verdict Form at 2.) Prior to trial, the parties stipulated to Teoh's week-by-

---

[1] The Defendants in this action are: Manhasset Restaurant, LLC; Roslyn Hospitality, LLC; Gold Coast Restaurant Corp.; Miracle Mile Restaurant, LLC; Wheatley Restaurant, LLC; East Meadow Avenue Restaurant Corp.; 100 Hospitality, LLC; Poll Restaurant Group, Inc.; George Poll; and Gillis Poll.

1

week work schedule and his annual salary, including raises, during the relevant period. (Joint Pre-Trial Order § X ¶¶ 46–50, ECF No. 75; Corrected Stip. ¶¶ 6–10, ECF No. 82-1.) Following trial, the parties agreed that N.Y.C.R.R. § 146-3.5 ("Section 146-3.5")—which sets forth the method of calculation for a hospitality worker's "regular rate of pay"—governs the calculation of compensatory damages to Teoh for Defendants' failure to pay him overtime wages, although Defendants noted that they "still intend[ed] to challenge the method of calculation" set forth in the regulation. (Nov. 12, 2024 Damages Calculation Ltr., ECF No. 93.)

Following the jury's verdict, the parties applied Section 146-3.5's method of calculation to the parties' stipulated facts and stipulated that this calculation yielded an amount of $184,067.52 in compensatory damages and pre-judgment interest for Teoh on his successful NYLL claim for failure to pay overtime wages. (Damages Calculation, ECF No. 93-1 at 2.) On November 19, 2024, this Court entered Judgment awarding Teoh that amount. (Judgment, ECF No. 94.)

Shortly thereafter, Defendants filed a Motion to Amend the Judgment under Rule 59(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and supporting submissions, arguing that Section 164-3.5 sets forth a method to calculate compensatory damages for NYLL overtime claims brought by hospitality workers that is contrary to New York public policy against punitive remedies for conduct that lacks enhanced culpability, violates due process guarantees under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 6 of the New York State Constitution, and conflicts with the NYLL statutory scheme. (Mot., ECF No. 100; ECF Nos. 98, 99, 103.) Teoh opposed. (ECF No. 101.)

Upon referral from this Court, Judge Dunst issued a Second Report and Recommendation, which recommended the denial of Defendants' substantive arguments for

2

setting aside this Court's Judgment.[2]  For the reasons explained below, I adopt the Second Report

and Recommendation and reject Defendants' objections as unpersuasive. Accordingly,

Defendants' Rule 59(e) Motion is denied, and Defendants must pay Teoh $184,067.52 in

compensatory damages and pre-judgment interest on Teoh's successful NYLL claim for unpaid

overtime wages.

## PROCEDURAL HISTORY

On December 17, 2024, Defendants filed their Rule 59(e) Motion. (ECF No. 100; *see

also* ECF Nos. 98, 99.) Plaintiffs opposed on December 26, 2024. (ECF No. 101.) Defendants

did not file a reply brief.

I referred the fully-briefed Motion to Magistrate Judge Lee G. Dunst. (Elec. Order, May

8, 2025.) On July 1, 2025, Judge Dunst issued a Report and Recommendation (the "First R&R")

in which he recommended that I deny the Motion on several procedural grounds raised by Teoh.

(First R&R, ECF No. 117.) Following the Court's grant of extensions requested by both parties,

Defendants timely filed objections on July 22, 2025 (Defs.' First Obj., ECF No. 119), and Teoh

timely filed a response on August 10, 2025 (Pl.'s First Resp., ECF No. 121).

On September 20, 2025, upon de novo review, I rejected the First R&R's

recommendation to deny the Motion in its entirety solely on procedural grounds. (First R&R

Order, ECF No. 124.) Specifically, I found the following: (1) Defendants had reserved their right

---

[2] On June 23, 2025, I issued an order adopting in full Judge Dunst's Report and
Recommendation (Attorney's Fees R&R, ECF No. 95), to which no party objected,
recommending that the Court award Teoh's counsel $45,170.77 in attorney's fees and $8,382.25
in costs. (Order Adopting Attorney's Fees R&R, ECF No. 115; Judgment on Attorney's Fees,
ECF No. 116.) The Court separately granted Plaintiff's motion to correct the Judgment on
Attorney's Fees due to a clerical error on March 27, 2026. (Elec. Order, Mar. 27, 2026; *see also*
Amended Judgment on Attorney's Fees, ECF No. 131.) Defendants' Motion to Amend the
Judgment does not seek to amend the Judgment on Attorney's Fees. (*See* Mot., ECF No. 100.)

to file the instant Motion, despite their failure to adequately address in their briefing the pertinent facts concerning when and how they did so (*id.* at 7–9); (2) although Defendants' challenge to Section 146-3.5's method of calculating the regular rate of pay would have been more appropriately brought as a motion for summary judgment under Rule 56, Fed. R. Civ. P., or a motion for judgment as a matter of law under Rule 50, Fed. R. Civ. P., Defendants were not procedurally barred from raising this issue on a Rule 59(e) motion to amend the judgment in light of the procedural history of this action; and (3) the New York State Board of Industrial Appeals does not have exclusive jurisdiction to decide constitutional challenges to Section 146-3.5 (*id.* at 9–13). Accordingly, I respectfully returned the Motion to Judge Dunst for a written report and recommendation regarding the merits of Defendants' arguments under (1) the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, (2) Article I, Section 6 of the New York State Constitution, and (3) the NYLL statutory scheme and New York public policy generally. (*Id.* at 13–14.)

On November 18, 2025, Judge Dunst issued a Second Report and Recommendation (the "Second R&R"), which recommended that I deny the facial and as-applied challenges to Section 146-3.5 set forth in the Motion. (Second R&R, ECF No. 125.) Defendants timely filed objections on December 2, 2025 (Second Obj., ECF No. 127), and Teoh timely filed a response on December 17, 2025 (Second Resp., ECF No. 129).

## LEGAL STANDARD

In reviewing a report and recommendation, a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

4

U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(3).

## DISCUSSION

Defendants bring several facial and as-applied challenges to the method of calculating damages for violations of the New York Labor Law's overtime wage requirements set forth in Section 146-3.5, which applies only to workers in the hospitality industry. Section 146-3.5 requires that if an employer pays an employee by salary (as opposed to hourly wages), "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, *by the lesser of 40 hours or the actual number of hours worked by that employee during the work week*." N.Y.C.R.R. § 146-3.5(b) (emphasis added). Defendants argue that this method of calculating the regular rate of pay should mirror the method set forth in N.Y.C.R.R. §§ 141-3.3, 142-2.16, which apply respectively to workers in miscellaneous industries and building service industries and require that "[w]hen an employee is paid on a . . . salary . . . the regular hourly [wage] rate shall be determined by dividing *the total hours worked during the week* into the employee's total earnings." N.Y.C.R.R. §§ 141-3.3, 142-2.16 (emphasis added). Defendants contend that the distinction results in the imposition of overly harsh and punitive compensatory damages under Section 146-3.5.

To illustrate the distinction between the two methods of calculation of compensatory damages for NYLL overtime claims, take the example of a worker who is paid a weekly salary of $1,000 per week for working 50 hours per week. Under Section 146-3.5, the regular rate of pay for this hospitality industry worker would be $25 per hour, which is calculated by dividing $1,000 by 40 hours per week—"the lesser of 40 hours or the actual number of hours worked by that employee during the work week," N.Y.C.R.R. § 146-3.5(b). By contrast, if the worker is employed outside the hospitality industry, under Section 141.3-3, the regular rate of pay would be $20 per hour, which is calculated by dividing $1,000 by 50 hours per week—"the total hours

5

worked during the week," N.Y.C.R.R. § 141-3.3. Defendants take issue with the fact that the hospitality worker has a regular rate of pay that is $5 per hour *greater* than that of a similarly situated non-hospitality worker by virtue of Section 146-3.5's method for calculating the regular rate of pay. In this scenario, the hospitality worker's time-and-a-half rate for overtime wages would be $37.50 per hour whereas the time-and-a-half rate for the non-hospitality worker would be $30 per hour. As a result, under Section 146-3.5, the hospitality worker would receive a greater amount of compensatory damages for unpaid overtime than the non-hospitality worker for the same number of unpaid overtime hours.

In the Motion, Defendants raise four challenges to Section 146-3.5. First, Defendants argue that the regulation's method of calculating the regular rate of pay violates "fundamental public policy" under New York law because it amounts to the imposition of punitive remedies on hospitality industry employers found liable under the NYLL for unpaid overtime even if a jury found that the employer acted in "good faith," as the jury did in this action. (Mot. at 6–8.) Second, they argue that Section 146-3.5's calculation method has resulted in the imposition of an "excessive punitive damages award[]" against Defendants in this action in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. (Mot. at 9–11.) In support, they contend that the damages for the NYLL overtime claim would be only $33,469.95 if damages were calculated under any applicable regulation other than Section 146-3.5. (*Id*. at 9.) Third, Defendants argue that in promulgating Section 146-3.5, the New York Department of Labor ("NYDOL") "enhance[d] penalties or establish[ed] punitive remedies" and thereby acted outside its authority under NYLL § 656. (Mot. at 11–12.) Fourth, Defendants argue that Section 146-3.5 establishes an "irrebuttable presumption" as to the amount of hours a hospitality worker's salary is intended to compensate and thereby "precludes the [employer's] right to be heard" in violation

6

of the due process guarantees of the Fifth and Fourteenth Amendments and Article I, Section 6 of the New York State Constitution. (*Id*. at 13–14.)

The Second R&R recommends that I deny the Motion on the following grounds. First, it concludes that Section 146-3.5 satisfies Defendants' Fifth and Fourteenth Amendment right to substantive due process because the regulatory history shows that the regulation is a "rational means to address the 'multitude' of overtime violations in the hospitality industry." (Second R&R at 13.) Second, it finds that Section 146-3.5 comports with rights to procedural due process under the Fifth and Fourteenth Amendments because it does not impose an "irrebuttable presumption" as to the amount of hours a hospitality worker's salary is intended to compensate, and Defendants had ample opportunity to be heard at trial to provide "documentary evidence refuting an employee's Section 146-3.5 overtime calculations," but failed to do so. (*Id*. at 7–9.) Third, the R&R concludes that the NYDOL validly enacted Section 146-3.5 pursuant to its NYLL authority because the regulation does not impose punitive remedies. (*Id*. at 18–22.) Fourth, according to the R&R, because Section 146-3.5 does not impose punitive remedies, it does not violate fundamental "public policy" of the NYLL. (*Id*. at 22–24.)

Defendants object to all four of the Second R&R's conclusions. First, with respect to their substantive due process argument, Defendants contend that the regulation fails rational basis review because: (1) it "ignores the actual hours worked, the parties' compensation agreement, the employer's good faith understanding . . . or any evidence indicating that the weekly salary was intended to compensate for all hours worked"; (2) it does not comport with the "good faith" defense available to employers under the NYLL; and (3) it fails to properly consider the factors set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), which applies to substantive due process analyses of economic regulations. (Second Obj. at 2–6.)

Second, with respect to their procedural due process argument, Defendants contend that the parties stipulated at trial that Plaintiff's salary "was intended to cover all hours of work" and that, contrary to Judge Dunst's findings, Defendants had indeed submitted evidence to "rebut the presumption of the 40-hour workweek under Section 146-3.5." (*Id.* at 8–9.) Third, with respect to the conclusion that Section 146-3.5 falls within the NYDOL's regulatory authority, Defendants respond that the NYLL does not empower the NYDOL to regulate salaries or set "arbitrary 40-hour denominators." (*Id.* 6–8.) Fourth, Defendants additionally reiterate the arguments set forth in their briefing that Section 146-3.5 imposes "punitive-effect damages," without advancing any new arguments to address Judge Dunst's reasoning that the damages are not punitive. (*Id.*) Finally, with respect to the conclusion that Section 146-3.5 does not violate fundamental "public policy," Defendants reiterate their assertion that the challenged damages are punitive in nature and therefore contrary to the NYLL's statutory scheme, including its recognition of an employer's defense of good faith effort to comply with the NYLL. (*Id* at 7–8.)

I adopt the Second Report & Recommendation for the reasons explained below. First and foremost, all of Defendants' arguments rely on the unsubstantiated notion that Section 146-3.5's method for calculating damages and the resulting imposition of damages against Defendants for failure to pay Teoh overtime are punitive in nature. However, for the reasons discussed below, Defendants are incorrect. Simply because the compensatory damages for a NYLL overtime claim calculated under Section 146-3.5 is larger than the compensatory damages calculated under wage orders governing non-hospitality industries does not render the calculated damages punitive in nature or effect. Second, Defendants fail to show that Section 146-3.5 violates the right to substantive due process on the basis that it sets forth a method for calculating damages that bears no reasonable relationship to the legitimate government interest in curbing hospitality

8

industry employers' failure to pay workers overtime wages. Third, Defendants also fail to show that their procedural due process rights were violated through the Court's application of Section 146-3.5 to calculate a compensatory damages award of $125,908.52 for Teoh on the NYLL overtime claim where Defendants were provided ample notice and an opportunity to be heard during pre-trial proceedings and a four-day jury trial. Finally, because the calculation of compensatory damages under Section 146-3.5 for successful unpaid overtime claims does not result in the imposition of punitive damages, I concur with Judge Dunst's conclusion that the regulation was enacted pursuant to the NYDOL's authority to regulate overtime compensation and does not run afoul of fundamental public policy under the NYLL.

**I.      Compensatory Damages Calculated Under Section 146-3.5 Are Not Punitive**

A common contention underlying Defendants' facial and as-applied challenges to Section 146-3.5's method of calculating compensatory damages for a NYLL failure-to-pay overtime claim is that the regulation's definition of the "regular rate of pay" results in the imposition of damages that are punitive in nature and effect. Because Defendants repeat this contention in almost all of their arguments, I address it before turning to Defendants' specific objections to the findings and conclusions of the Second R&R.

At trial, the parties stipulated that Defendants paid Teoh by salary starting in 2017, the amount of the salaries that he was paid during different time periods during the years at issue, and the average number of hours per week that Teoh worked for each week of the relevant period. (Court Ex. 3 at 19–22 ("Jury Charge"), ECF No. 90 (Table A setting forth regular weekly schedules during the relevant period; Table B setting forth annual and weekly salaries during the relevant period).) Accordingly, the parties agreed that Teoh worked a specific number of hours more than 40 hours a week during specified weeks of the relevant period and that Defendants did

not pay Teoh any additional wages beyond his salary for any hours worked above 40 hours. (*See id*.) Based on these stipulated facts and evidence adduced at trial, the jury found, among other things, that Teoh was not an "executive employee" who was exempt from the New York Labor Law's requirement that employers pay certain employees at least one-and-a-half times either the employee's regular rate of pay or the statutory minimum wage, whichever is greater, for hours worked over 40 hours in a given workweek. (Jury Verdict Form; Jury Charge at 19.) The jury also found that Defendants nevertheless acted in good faith in failing to pay Teoh overtime wages. (Jury Verdict Form at 2.) The parties agreed that Section 146-3.5 applies to the calculation of compensatory damages for Defendants' violation of the NYLL's overtime wage requirements and that, based on Teoh's stipulated hours of work and salaries, the Section 146-3.5 calculation yielded a total amount of $125,908.52 in compensatory damages for the overtime claim. (*See* ECF Nos. 93, 93-1.)

Defendants contend that the $125,908.52 compensatory damages figure is punitive in effect for four overarching reasons. First, the $125,908.52 amount is larger than it would be if Teoh were employed in an industry outside of hospitality, where damages would be calculated under a wage order that defines the regular rate of pay as the weekly salary divided by the actual number of hours worked that week rather than a maximum of 40 hours per week. Second, the $125,908.52 amount is larger than it would be if Defendants had been paying Teoh on an hourly basis, rather than by salary, and the jury had still found that Defendants failed to pay him overtime wages. (*See* Mot. at 8 (arguing that an "*extreme disparity* between salaried and hourly employees for the same pay and hours demonstrates an entirely punitive, and not compensatory, intent and effect" (emphasis added)); *see id*. at 9 ("Here, the Judgment awards overtime damages . . . merely for paying Plaintiff on a salary basis and not on an hourly basis.").) Third, the

10

$125,908.52 amount fails to account for the jury's determination that Defendants acted in good faith in failing to pay Teoh overtime by misclassifying him as an executive employee exempt from the NYLL's overtime requirements. (*See* Second Obj. at 5 ("[T]he regulation penalizes the use of weekly salaries that are mandatory for exemptions and even when adopted in good faith.").) Fourth, Defendants and Teoh purportedly had an agreement that his salary would compensate him for all hours worked, so the calculation of compensatory damages for unpaid overtime wages under Section 146-3.5 incorrectly assumes that Defendants paid Teoh nothing for his overtime hours when Defendants actually paid Teoh *something* for those hours. (*See* Mot. at 12 ("[The regulation] fails to credit at least the minimum wages paid for hours worked over 40 in a week – therefore, creating a "double dip" by automatically declaring wages unpaid for those hours," and "requires liquidated damages to be awarded for more than 'underpayment of wage' in NYLL § 198 – it punishes technical violations"); *see also* Second Obj. at 1 (stating that the regulation "in application essentially imposes punitive consequences").)

None of these contentions demonstrates that the calculation of compensatory damages under Section 146-3.5 results in the imposition of punitive damages for the reasons explained in the Second R&R and below.

First, Defendants' objections amount to little more than displeasure at the fact that the compensatory damages calculated under Section 146-3.5 are higher than they would be under *entirely different* factual scenarios, such as if Defendants were operating in a different industry or if Defendants had *not* elected to change Teoh from an hourly employee to a salaried employee in 2017. But neither of these alternative scenarios are true. Here, Defendants stipulated that *they* decided to change Teoh from an hourly to a salaried worker on or around August 28, 2017. (*See* Joint Pre-Trial Order ¶ 48 ("Thereafter, Boon Hooi Teoh's job title changed from sushi chef to

11

sous sushi chef, and his pay structure changed from $13.50 per hours to $55,000 annually."); Jury Charge at 20, 22 (noting parties' agreement that on August 28, 2017, Defendants began paying Teoh a $55,000 annual salary).) Moreover, Defendants stipulate that Teoh was working a specific number of compensable overtime hours on average during specified weeks of the relevant period. (Jury Charge at 19–20.) The New York Department of Labor promulgated Section 146-3.5 pursuant to the recommendation of the Wage Board that compensatory damages for a hospitality industry employer's failure to pay overtime to a worker who is entitled to time-and-a-half overtime under the NYLL should be calculated based on a regular rate of pay defined as the weekly salary divided by the lesser of the number of actual hours worked or 40 hours. Simply because the NYDOL identified a different method for calculating compensatory damages for unpaid overtime for employees outside of the hospitality industry does not render the resulting compensatory damages punitive.

Defendants' repeated characterization of the $125,908.52 compensatory damages figure as punitive thus boils down to an unhappiness about their obligation to pay what they perceive to be a larger figure than warranted. But the mere size of the damages award does not render it punitive. The $125,908.52 damages amount is meant to compensate Teoh so that he is made whole for the time-and-a-half that he was not paid for overtime hours worked from August 28, 2017 through October 31, 2024. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.' . . . By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution.").

Defendants' invocation of the "good faith" defense in support of their contention that Teoh's $125,908.52 compensatory damages award has a punitive effect is unavailing for the

12

reasons discussed in more detail below at Discussion Section II.A. In summary, the New York State Legislature determined that an employer's showing of good faith should be rewarded with the elimination of the requirement to pay liquidated damages *on top of* compensatory overtime damages. *See* N.Y. Lab. Law § 198 (providing that "[l]iquidated damages shall be calculated . . . as no more than one hundred percent of the total amount of wages found to be due," unless certain exceptions not applicable here apply); Second R&R at 17 (noting that if this Court had imposed liquidated damages, Defendants "would have been responsible for an additional $139.008.23"). Defendants' contention that their good faith should *also* result in a reduction of compensatory damages calculated under Section 146-3.5 amounts to a mere disagreement with the policy choice of the New York State Legislature and the NYDOL, neither of which determined that the good faith of any employer, much less an employer in the hospitality industry, should reduce the amount of damages imposed to make whole a worker when the employer fails to pay them time-and-a-half overtime wages required under the NYLL. Moreover, as Judge Dunst reasoned, the $125,908.52 in compensatory damages awarded to Teoh is not itself a liquidated damages award just because Defendants acted in good faith. (*Id.* at 16–17.) Courts traditionally award liquidated damages *in addition to* compensatory damages at the amount of 100% of the unpaid wages, and I made no such calculations here. (*Id.*; *see also Prudencio Trejo v. Blanca's Bakery & Deli Inc.*, No. 2:23-cv-6063, 2025 WL 850625, at *3 (E.D.N.Y. Mar. 19, 2025) (imposing damages under Section 146-3.5 and separately awarding liquidated damages at 100% of unpaid wages); *Paulino v. S & P Mini Mkt. Corp.*, 791 F. Supp. 3d 457 (S.D.N.Y. 2025) (same); *Kargar v. Kamolov,* No. 22-cv-00664, 2025 WL 4063721 (S.D.N.Y. Dec. 16, 2025), *report and recommendation adopted*, No. 22-cv-664, 2026 WL 149786 (S.D.N.Y. Jan. 20, 2026) (same and additionally awarding punitive damages).

Finally, Defendants' contention that the $125,908.52 compensatory damages award to Teoh under Section 146-3.5 is punitive in nature and effect is based in part on the unsupported factual contention that the parties had an express agreement that Teoh's salary compensated him for all of the hours that he worked in a given work week, including all hours above 40 hours per week. Defendants repeat this contention throughout their briefing. (*See, e.g.*, Mot. at 8 (referring to "the express stipulation that Defendants paid Plaintiff on a salary basis as compensation for all hours worked in a workweek"); Second Obj. at 2 (referring to "the *trial-stipulated fact* that Plaintiff's salary compensated him for all hours of work, including for hours over 40" (emphasis added)); *id*. at 3 ("This regulation ignores . . . the parties' compensation agreement . . . or any evidence indicating that the weekly salary was intended to compensate for all hours worked."); *id*. ("Other Wage Orders and the FLSA, on the other hand, acknowledge the possibility of submitting evidence to demonstrate mutual understanding between parties that a salary is intended to cover all hours of work.").) Based on this proposition, Defendants argue that the damages calculation required by Section 146-3.5 punishes Defendants by assuming that Teoh was paid nothing for the hours above 40 that he worked in any given week, when in fact Defendants paid Teoh some amount of money for those overtime hours, even if they did not pay him time-and-a-half.

Defendants' contention is simply unsupported by the record. After the close of Teoh's case, Defendants requested a directed verdict on the issue of whether Defendants and Teoh had an agreement that the various salaries Defendants paid Teoh during the relevant time period covered *all* of the hours he worked above 40 hours per week. (Tr. 588:12–589:5.) Teoh opposed that motion, arguing that there was no testimony showing that *both* Defendants *and* Teoh understood that the salaries covered any particular number of hours of work per week. (*Id*.

14

589:8–20 (citing *Saldarriaga Saldarriaga v. IND Glatt, Inc.*, No. 17-cv-2904, 2019 WL 1332887 (E.D.N.Y. Mar. 25, 2019)).) I denied the motion for the following reasons:

> Viewing the evidence in the light most favorable to the plaintiff, the nonmoving party with respect to the motion, I conclude that defendants are not entitled to judgment as a matter of law on the issue of whether there was an express[] agreement between the plaintiff and his employer that his annual salary covered all hours worked.
>
> There are credibility determinations that a jury must make. And even if there are any contradictions, it's within the province of jury to resolve those contradictions, and make those credibility determinations. So making all reasonable inferences in favor of the nonmoving party, I find that a jury could find for the plaintiff with respect to this issue of whether or not there was an express[] agreement between him and his employer that his annual salary covered a specific amount of overtime every week. Or as the defendant phrased it, all hours worked.

(*Id.* 590:22–591:15.) Defendants did not renew their Rule 50 motion after the jury reached a verdict, and any such motion was due "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged." Fed. R. Civ. P. 50(b).

Moreover, based on the trial testimony, a reasonable jury could have concluded that although Defendants paid Teoh by salary in different amounts throughout the relevant period, there was *no specific agreement* that the hours he worked above 40 hours per week were paid *at all*. Defendants failed to elicit any testimony by Teoh that he understood his salary to cover payments for a specific number of overtime hours in any given pay period.

> Q (Defendants' counsel). Would those notes tell you how much you believe you should earn for five days?
> A (Teoh). Working for five days?
> Q. Yes.
> A. It should be 1384.61.
> Q. And in around that time period, was that your usual weekly pay?
> A. Are you talking about 1384.61?
> Q. Yes, correct.
> A. Yes.
> Q. So for all five days no matter how many hours you worked on each of those days, your salary is expected to be that number?

A. Yes. Yes. My time schedule was arranged by Mr. Chen. So it varies, but it was decided by Mr. Chen.
Q. So no matter how much it varied, time schedule, you would still be paid the same amount?
A. Yes. They paid me that amount for each week of my work.

(Tr. 525:7–25.) Thus, Teoh admitted that he did not expect to be paid more than his weekly salary no matter how many hours he worked each week. But that does not constitute an admission that he agreed that his salary compensated him for all of the hours that he worked over 40 in a given week. Defendants also asked Teoh other questions related to his compensation but never elicited a response showing that Teoh understood his annual salary to compensate him specifically for the hours he worked above 40 hours per week, or that there was any 'meeting of the minds' regarding whether Teoh's salary constituted payment for overtime hours. (*See, e.g.*, *id*. 376:22–377:14 (discussing deductions from Teoh's pay); 397:6–398:12, 413:2–415:15 (discussing Teoh's pay raises); 431:13–434:11 (discussing Teoh's schedule).

All that is clear from the record is that Defendants paid Teoh by salary in specific amounts throughout the relevant period and that Teoh did in fact work specific and varying weekly schedules, as shown in the following tables, which were included in the Jury Charge by agreement of the parties:

*Table A, Jury Charge at 20–21*

| Time Period | Regular Weekly Schedule | Average Hours Worked Per Week | Weekly Compensable Overtime Hours |
|---|---|---|---|
| August 28, 2017 – September 22, 2019 | Mon: 11:00am-10:00pm (one 1-hour break)<br>Tue: OFF<br>Wed: OFF<br>Thu: 11:00am-10:30pm (one 1-hour break)<br>Fri: 11:00am-10:30pm (one 1-hour break) | 53 | 13 |

16

|  | Sat: 11:00am-11:30pm (one 1-hour break) Sun: 11:00am-10:30pm (one 1-hour break) |  |  |
| --- | --- | --- | --- |
| September 23, 2019 – February 29, 2020 | Mon: 11:00am-10:30pm (one 1-hour break) Tue: OFF Wed: OFF Thu: 12:00pm-10:30pm (one 1-hour break) Fri: 12:00pm-10:30pm (one 1-hour break) Sat: 12:00pm-11:00pm (one 1-hour break) Sun: 11:00am-10:30pm (one 1-hour break) | 50 | 10 |
| March 1, 2020 – May 31, 2020 | Mon: 12:00pm-8:00pm (no break) Tue: OFF Wed: OFF Thu: 12:00pm-8:00pm (no break) Fri: 12:00pm-8:00pm (no break) Sat: 12:00pm-8:00pm (no break) Sun: 12:00pm-8:00pm (no break) | 40 | 0 |
| June 1, 2020 – March 31, 2022 | Mon: 11:00am-10:30pm (one 1-hour break) Tue: OFF Wed: OFF Thu: 12:30pm-10:30pm (one 1-hour break) Fri: 12:30pm-10:30pm (one 1-hour break) Sat: 12:30pm-11:30pm (one 1-hour break) Sun: 11:00am-10:30pm (one 1-hour break) | 49 | 9 |
| April 1, 2022 – Present | Mon: 2:00pm-10:30pm (one 1-hour break) Tue: OFF Wed: OFF Thu: 12:30pm-10:30pm (one 1-hour break) | 43 | 3 |

17

| | | | | |
|---|---|---|---|---|
| | Fri: 12:30pm-10:30pm (one 1-hour break) Sat: 12:30pm-11:30pm (one 1-hour break) Sun: 2:00pm-10:30pm (one 1-hour break) | | | |

*Table B, Jury Charge at 22*

| From | To | Flat Annual Salary | Weekly Pay Rate (Flat Annual Salary Divided by 52) | New York Labor Law Regular Rate of Pay (Weekly Pay Rate Divided by 40) |
|---|---|---|---|---|
| August 28, 2017 | June 30, 2019 | $55,000 | $1,057.69 | $26.44 per hour |
| July 1, 2019 | September 20, 2019 | $60,000 | $1,153.85 | $28.85 per hour |
| September 21, 2019 | September 5, 2021 | $65,000 | $1,250.00 | $31.25 per hour |
| September 6, 2021 | Currently | $72,000 | $1,384.62 | $34.62 per hour |

Defendants' claim that the parties had an agreement that Teoh's salaries provided him at least some compensation for hours worked above 40 hours a week reads too much into the parties' stipulated facts and Teoh's testimony. As shown, it is unclear whether Teoh simply did not know that he was entitled to payment for the hours he worked beyond 40 per week, whether he thought his salary was covering those additional hours, or something else. Nor did Defendants propose that the jury be asked to determine whether there was any express agreement between the parties as to whether Teoh's salaries compensated him for all hours worked or move for a judgment as a matter of law on this issue following the jury's verdict.

Accordingly, Defendants' contention that the calculation of NYLL overtime damages under Section 146-3.5 effectively punishes them by ignoring evidence of an express agreement

of the parties that Teoh's salaries would pay him for all of the hours he worked above 40 per week is simply belied by the factual record and unsupported by law. *See Shanfa Li v. Chinatown Take-Out Inc.*, 812 F. App'x 49, 52 (2d Cir. 2020) (rejecting defendant's challenge to 40-hour denominator under Section 146-3.5 in light of district court findings that "Defendants failed to 'offer any credible evidence' of an agreement or understanding that Plaintiffs' wages were intended to compensate more than forty hours a week").

With these overarching deficiencies in Defendants' argument that Section 146-3.5 results in the imposition of overtime damages that are punitive in nature and effect, I turn to Defendants' facial and as-applied challenges to Section 146-3.5 on substantive due process and procedural due process grounds.

## II.    Substantive Due Process

Defendants make several objections to the Second R&R's conclusion that Section 146-3.5 does not violate their Fifth and Fourteenth Amendment rights. None are persuasive.

### A.  Facial Challenge

Defendants challenge Section 146-3.5 as facially invalid because (1) it purportedly "ignores the actual hours worked, the parties' compensation agreement, the employer's good faith understanding, . . . or any evidence indicating that the weekly salary was intended to compensate for all hours worked"; (2) does not comport with the "good faith" defense available to employers under NYLL; and (3) fails to properly consider the factors set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), which applies to substantive due process analyses of economic regulations. (Second Obj. at 2–6.)

First, for all of the reasons already discussed, Section 146-3.5 does not ignore the actual hours worked by an employee whose right to overtime wages under the NYLL was violated by

19

an employer. The regulation expressly provides that "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or *the actual number of hours worked by that employee during the work week.*" N.Y.C.R.R. § 146-3.5(b) (emphasis added). Therefore, Section 146-3.5 does not disregard the "actual hours worked," but rather, reflects a policy decision that the actual number of hours worked factors into the calculation of the regular rate of pay used to calculate compensatory damages for unpaid overtime only where the employee worked less than 40 hours a week. Defendants' disagreement with the NYDOL's decision to draw such a distinction does not establish that the regulation lacks a relationship to the actual harm in question. As Judge Dunst explained, Section 146-3.5 and its enabling statute were enacted to rectify conditions of insufficient pay "*as rapidly as practicable* without substantially curtailing opportunities for employment." (Second R&R at 14) (quoting N.Y. Lab. Law § 650) (emphasis added). Specifically, Judge Dunst found that the NYDOL intended to "clarif[y] that all hospitality employees . . . must receive an overtime premium for hours worked beyond the 40-hour workweek" and that Section 146-3.5(b) functioned to "put hospitality employers on notice of their overtime obligations under the NYLL." (*Id*. at 13.) Moreover, I agree with Judge Dunst that the maximum 40-hour denominator bears a reasonable relationship to the goal of addressing overtime violations in the hospitality industry and providing "notice" to employers "as rapidly as practicable" of their obligations.

Second, Defendants' objection that the R&R's substantive due process analysis improperly ignores the import of the New York State Legislature's provision of a 'good faith' defense" to employers who "make efforts to comply with wage & hour laws" is similarly unpersuasive. (Second Obj. at 4.) As explained in the Second R&R, Section 146-3.5 was enacted in response to specific findings and goals by the NYDOL and the New York State Legislature

20

regarding overtime compensation for workers in the hospitality industry. (Second R&R at 10–15.) The New York State Legislature determined that an employer who makes a reasonable effort to comply with the NYLL's overtime wage requirement but nevertheless fails to pay a worker time-and-a-half wages for overtime should be rewarded only with the reduction or elimination of liquidated damages and *not* an additional reduction of compensatory damages. *See* N.Y. Lab. Law § 198. Similarly, the NYDOL decided—after receiving recommendations and public comment—to adopt in Section 146-3.5 a method of calculating damages for NYLL overtime violation claims relating to hospitality industry workers that does *not* reduce compensatory damages where an employer shows good faith. Defendants' disagreement with these policy decisions does not render Section 146-3.5's method for calculating compensatory damages arbitrary and irrational. The regulation bears a reasonable relationship to mitigating the actual harm of rampant failure to pay hospitality workers overtime compensation and is justified by a legitimate government interest in compensating such workers when hospitality employers fail to pay them overtime wages. Specifically, Judge Dunst noted that the NYDOL had already addressed arguments that the regulation "would increase costs to businesses and hurt jobs" when adopting Section 146-3.5(b), by pointing out that "[o]nly if a business does not comply with the new law and fails to pay an hourly rate plus overtime does the new regulation make it more costly for the employer . . . ." (*Id*. at 13–14.)[3]

Third, Defendants are simply incorrect in their objection that the Second R&R's

---

[3] The NYDOL's reasoning was further validated by the New York State Legislature when it enacted Section 146-3.5(b)'s enabling statute, the Minimum Wage Act, which explicitly provides that insufficient pay "impairs the health, efficiency, and well-being" of employees, "threatens the stability of industry, reduces the purchasing power of employees," and "threatens the health and well-being of the people of [New York] and injures the overall economy." (N.Y. Lab. Law § 650; *see also* Second R&R at 14.)

substantive due process analysis erred in failing to apply the multi-factor analysis set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996). In *Gore*, the Supreme Court set forth factors for a court to consider when assessing whether the imposition of *punitive* damages is "grossly excessive" and therefore "arbitrary" with respect to the "State's legitimate interests in punishment and deterrence" in violation of the Fourteenth Amendment right to substantive due process. 517 U.S. at 568; *see id*. at 575–84 (discussing indicia of "an unreasonable or excessive punitive damages award"). *Gore* does not apply here, where Defendants challenge the method of calculating a *compensatory damages* award under Section 146-3.5. Again, as discussed previously, Defendants fail to provide any support in caselaw, statute, or regulation for their contention that the resulting figure for compensatory damages is punitive simply because it is larger than it would be if the underlying facts are different.

Accordingly, I adopt the Second R&R's recommendation to reject Defendants' facial challenge to Section 146-3.5 on substantive due process grounds.

### B. As-Applied Challenge

As previously noted, the application of Section 146-3.5 to Teoh's successful claim against Defendants for unpaid overtime wages does not ignore any purported compensation agreement between the parties. The parties did not stipulate to any such agreement. (*See* Discussion Section I *supra*; Joint Pre-Trial Order § X ¶¶ 46–50; Corrected Stip. ¶¶ 6–14.) The jury was not asked to find whether the parties had any such agreement and did not indicate that it made any such finding. (*See* Jury Charge; Jury Verdict Form.) Although Defendants moved for judgment as a matter of law on this issue, Defendants failed to point to any specific trial evidence establishing that the parties reached such an agreement. (*See* Tr. 588:12–591:15, Docket, 2:22-cv-4110.) Moreover, Plaintiff opposed the motion, this Court denied it due to the existence of

22

questions of fact, and Defendants never filed a post-verdict motion on this issue. (*See id.*) Accordingly, the record simply does not show that the parties had any agreement that the salaries Defendants paid Teoh compensated him for all hours worked above 40 hours per week. *See* Discussion Section I *supra.* Defendants complain that in contrast to Section 146-3.5, "[o]ther Wage Orders and the FLSA . . . acknowledge the possibility of submitting evidence to demonstrate mutual understanding between parties that a salary is intended to cover all hours of work." (Second Obj. at 3.) But contrary to their contention, *nothing* barred Defendants from proposing a special verdict form for the jury on the question of whether the parties had an agreement that Teoh's salaries would specifically compensate him for all of the hours worked over 40 hours per week during the relevant time period.

Finally, Defendants' argument that Teoh "was always paid above the salary threshold under the NYLL" is also inapposite to the substantive due process analysis. (Second Obj. at 6.) Defendants appear to argue that if Teoh's salaries are understood to cover all hours worked, he was paid more than the minimum wage for all hours worked, including all overtime hours during the relevant period. (*See* Dft's Alternate Damages Calculations, ECF No. 99-4 (reflecting hours worked and weekly salary, resulting in hourly wage calculations of at least $19 to $32 per hour).) This argument is beside the point. The NYLL does not contain any compensatory damages carveouts exempting employers who misclassify their employees as salaried employees but nevertheless pay them above the minimum wage. As provided above, it provides employers with a "good faith" defense to liquidated damages, which Defendants successfully made here. Further, as discussed in Discussion Section I, *supra*, there was no agreement between the parties that Teoh's salaries were understood to cover all hours worked, so Defendants' hypothetical is irrelevant.

Accordingly, I agree with Judge Dunst's recommendation to reject Defendants' as-applied challenge to Section 146-3.5 on substantive due process grounds. In concluding that both Section 146-3.5's method for calculating compensatory damages and the specific award of $125,908.52 in compensatory damages to Teoh bear a reasonable relationship to the legitimate government interest in compensating hospitality workers when their employers fail to pay them required overtime wages, I fully account for the fact that the New York State Legislature and NYDOL contemplate larger compensatory damages awards for salaried hospitality workers whose employers fail to pay them overtime required under NYLL as compared to salaried workers in other industries who experience the same violation.

## III.   Procedural Due Process

### A.   Facial Challenge

Defendants' procedural due process challenge to Section 146-3.5 as facially invalid is premised on the contention that Section 146-3.5 creates an "irrebuttable presumption" that a salary provides compensation for only the first 40 hours of work. (Second Obj. at 8–9; Mot. at 13–14.) Defendants' framing is incorrect. "There is a 'rebuttable presumption' [under the NYLL] that a 'weekly salary covers only the first 40 hours' Plaintiff worked each week." *Beltran v. Imamura, Inc.*, No. 22-cv-3636, 2025 WL 2793754, at *4 (S.D.N.Y. Aug. 21, 2025), *report and recommendation adopted*, No. 22-cv-3636, 2025 WL 2793736 (S.D.N.Y. Oct. 1, 2025) (awarding damages calculated pursuant to Section 146-3.5); *Shanfa Li*, 812 F. App'x at 52 (affirming district court award of damages calculated pursuant to Section 146-3.5 in light of defendants' failure to rebut the 40-hour presumption); *see also Soto v. Crismeli Deli Grocery Inc.*, No. 19-cv-10053, 2024 WL 3730115, at *6 (S.D.N.Y. June 28, 2024), *report and recommendation adopted*, No. 19-cv-10053, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024) (noting

24

that the NYLL provides this "rebuttable presumption," "*unless the parties have an alternate agreement*" (emphasis added)); Second R&R at 8 ("If a portion of an employee's wages were 'credited to overtime,' employers can provide courts with documentary evidence refuting an employee's Section 146-3.5 overtime calculations. Employers can offer that evidence at any point before a judgment is enforced, giving them ample opportunity to be heard before they are 'deprived' of money.").

As discussed, at trial, Defendants had the opportunity to introduce evidence demonstrating that the parties had an understanding or agreement that Teoh's salary paid him for more than 40 hours per week. Defendants failed to do so. *See* Discussion Section I *supra*. Further, this Court repeatedly asked the parties whether they stipulated to such an agreement. (*See, e.g.*, Tr. 478:6–9, 482:17–20.) Defendants also had the opportunity to challenge Teoh's contention that he was a non-exempt employee entitled to overtime as well as the specific overtime hours that he worked during the relevant period. Although Defendants failed on their challenge to Teoh's exempt status, they did not even seek to challenge the total number of hours he worked, including overtime hours.

Accordingly, Defendants fail on their facial procedural due process challenge to Section 146-3.5 for the reasons set forth in the Second R&R and above.

## B. **As-Applied Challenge**

Defendants argue that the Second R&R's conclusion that the imposition of compensatory damages pursuant to the Section 146-3.5 calculation did not violate Defendants' right to procedural due process ignores undisputed facts, specifically the purported "stipulated trial fact that Plaintiff's salary was intended to cover all hours of work" and the jury's verdict that "Defendants acted in good faith in applying the managerial exemption to overtime

25

requirements." (Second Obj. at 8–9; *see also* Second R&R at 9.) This argument fails for the following reasons.

First, Defendants once again fail in their briefing to point to any specific evidence in the trial record to support the claim that it is *undisputed* that Teoh was paid a salary intended to compensate him for all hours of work, including overtime hours, or that Defendants "submitted appropriate undisputed evidence . . . to rebut the presumption of the 40-hour workweek under Section 146-3.5." (Second Obj. at 9.)[4] Defendants' procedural due process challenge to Section 146-3.5 as applied thus boils down to another iteration of their contention that the parties had an express agreement that Teoh's salary was payment for all of the hours worked, including hours beyond 40 per week. I have already explained why that contention is incorrect. *See* Discussion Sections I, II.B, *supra*.

Second, the Second R&R correctly noted that Defendants were given an adequate opportunity to be heard on the question of whether the parties had an agreement that the various salaries paid to Teoh were intended to compensate him not just for 40 hours of work per week but also for all overtime hours. (Second R&R at 9.) Defendants engaged in three days of depositions, the exchange of voluminous discovery, and four days of trial. At trial, Defendants questioned Teoh about his salary and his hours worked, but never explicitly asked him whether he had an express agreement with Defendants that any hours above 40 hours per week were compensated by his salary. (*See* Tr. 524:10–525:25.) At the close of Teoh's case, Defendants also moved for judgment as a matter of law on this issue but failed to point to any specific evidence in support, and I denied the motion. (*Id*. 588:12–591:15.) Prior to commencement of

---

[4] *See* First R&R Order at 8 ("Defendants' submissions on the Motion [to Amend] do not provide the relevant record citations from which to assess whether Defendants preserved their ability to raise challenges to Section 146-3.5.").

trial, the parties stipulated to the average number of hours worked by Teoh and the annual and weekly salaries that Teoh was paid during the relevant time period, and during the charge conference, the parties agreed to include these stipulations in the Jury Charge. (*See* Corrected Stip. ¶¶ 6–14; Jury Charge at 20–21.) But nowhere did the parties capture any agreement that the salary was intended to cover all hours worked above 40. Nor did Defendants point to trial testimony showing that Teoh had such an understanding. *See* Second R&R at 9; *Shanfa Li*, 812 F. App'x at 52.

Finally, Defendants also rely on their contention that Teoh was paid a salary intended to compensate him for his overtime hours in arguing that their successful good faith defense to liquidated damages somehow demonstrates that the application of Section 146-3.5 in this action denied them of notice and an opportunity to be heard. (*See* Second Obj. at 9.) However, as already discussed at length above and in Discussion Section II.A, *supra*, Defendants are incorrect that the parties had any such agreement. Moreover, Defendants have not articulated any reason why procedural due process requires them to be afforded an opportunity to be heard as to whether their good faith should result in a reduction of the compensatory damages awarded to Teoh for a successful NYLL claim for failure to pay overtime wages, particularly where the New York State Legislature and NYDOL have not decided that good faith is even relevant to the computation of compensatory damages for a NYLL overtime claim.

## IV.    NYDOL Authority and Fundamental Public Policy under the NYLL

Defendants maintain that the NYLL "does not permit the Department or a Wage Board to impose punitive-effect remedies, rewrite underlying facts surrounding salary arrangements, or create mandatory damages formulas unrelated to minimum wage or overtime rates." (Second Obj. at 6.) Defendants first argue that the NYLL limits the scope of the NYDOL's authority,

which does not include the power "to [r]egulate [s]alaries." (*Id*.) Defendants maintain that Section 146-3.5 "deems every hospitality salary to cover exactly 40 hours, regardless of intent or evidence," "prevents employers from showing that a salary was intended to compensate all hours worked," and "requires courts to use a fictional denominator as a matter of law, which is not a rate but an evidentiary presumption." (*Id*. at 7.)

Defendants mischaracterize Section 146-3.5, which does not regulate "salaries," as Defendants contend, but the calculation of compensatory damages for an employer's failure to abide by the New York Labor Law requirement to pay overtime to non-exempt employees— which falls well within the NYDOL's authority, as Defendants recognize. (*See id*. at 6 ("The Minimum Wage Act empowers NYDOL to define rates").) The jury found that Defendants misclassified Teoh as an employee exempt from the overtime requirements, *and* the parties stipulated that Defendants never paid Teoh time-and-a-half overtime wages for any hours that he worked above 40 hours per week. The Wage Board noted the difficulty of calculating a worker's hourly rate of pay in instances where employers compensate non-exempt workers by salary. (*See* Second R&R at 12 (quoting the finding of the Wage Board Report that "[o]vertime calculations for those who are paid at a weekly or piecework rate are complicated and, as a result, frequently figured incorrectly, denying workers their proper overtime rate").) Defendants fail to show that Section 146-3.5 is outside of the bounds of the NYDOL's authority.

For these same reasons, the Second R&R correctly identified *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337 (E.D.N.Y. 2014), as "instructive." (Second R&R at 19.) There, the court expressly rejected defendants' challenges to a provision mandating the payment of time-and-a-half overtime wages for workers in miscellaneous industries, 12 N.Y.C.R.R. § 142-2.2 ("Section 142-2.2"), and found that the NYDOL passed the regulation in an exercise of

its authority. *Rocha*, 44 F. Supp. 3d at 350–58. Defendants' efforts to distinguish *Rocha* as pertaining to "a materially different regulation" are unpersuasive. Both Section 146-3.5 and Section 142-2.2 are derived from the Minimum Wage Orders for their respective industries. Defendants' contention that the NYDOL is authorized to define the overtime rate of pay as one-and-a-half times the regular rate of pay, but is *not* authorized to define the "regular rate of pay"— focuses on a thin distinction that is unsupported by the text of the NYLL.[5]

Next, Defendants argue that the state legislature "has expressly limited punitive-effect remedies under the NYLL," "even where the employer acted in complete good faith." (Second Obj. at 7–8.) Defendants' argument on this point simply repeats their arguments already advanced in their First and Second R&R Objections as well as their Motion to Amend the Judgment, which this Court has already rejected. *See* Discussion Section I *supra*.

## CONCLUSION

For the reasons set forth above, I adopt the thorough and well-reasoned recommendation set forth in the Second R&R that I deny Defendants' Rule 59 Motion to Amend the Judgment (ECF No. 98, 100) in full. Defendants' Motion is denied.

---

[5] *See, e.g.*, N.Y. Lab. Law § 655.5(b) ("In addition to recommendations for minimum wages, the wage board may recommend such regulations *as it deems appropriate* . . . to safeguard minimum wages. . . . Such recommended regulations may also include, but are not limited to, regulations governing . . . *overtime* or part-time *rates* . . . .") (emphasis added).

The Judgment entered on November 19, 2024 (ECF No. 94) and the Amended Judgment on Attorney's Fees entered on March 30, 2026 (ECF No. 131) remain unchanged.


Dated: Central Islip, New York
         March 30, 2026


       */s/ Nusrat J. Choudhury*
       NUSRAT J. CHOUDHURY
       United States District Judge